Filed 12/1/21  P. v. Arteaga CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059174 |
| v. | (Super. Ct. No. 18NF3073) |
| VICTOR HUGO ARTEAGA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Lynelle K. Hee, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*   \*   \*

This is an appeal from a jury trial in which appellant was represented by counsel. We take the facts from the brief filed on appellant's behalf by his attorney; they seemed to us to be the best face that could be put on appellant's case, and they demonstrate rather clearly why counsel was unable to find an issue to argue in appellant's behalf:

"In August of 2018, Kelly C. ('Kelly') was fourteen years old. Her mother and father lived separately, and Kelly C. alternated between them. She frequently left home without her parents' permission.

"She met appellant sometime in May 2018 at a park in Anaheim. She was with Abby, her 15 or 16-year-old friend. Kelly told appellant that she was 14 years old, but later, at Abby's urging, Kelly said she was 15 years old. Abby told Kelly that appellant was thirty-five years old.

"During August of 2018, Kelly used methamphetamine on a daily basis. Kelly would occasionally use methamphetamine with appellant.

"Kelly recalled a day in August of 2018 when she snuck out of her father's house. She planned to meet Abby and appellant to smoke methamphetamine. Appellant met Kelly outside her father's house. As they were leaving, her father confronted Kelly. After a brief argument with her father, Kelly left and met appellant a few blocks away.

"As they walked to the park, appellant told Kelly to come with him behind a dumpster. Appellant suggested they hide in case the 'cops were going to pass by.' At appellant's request, Kelly orally copulated him behind the dumpster.

"The two of them continued walking around as they tried to find their friends. They rested at a laundromat inside an apartment complex. The owner of the laundromat told them to leave, so they walked to another laundromat in another complex on Wakefield. Appellant made a bed on the floor with some blankets. They laid down next to each other, and appellant started touching Kelly's legs, and began to 'finger' her, placing his fingers inside her vagina. At his suggestion, Kelly orally copulated appellant

2

again.  The two of them had sexual intercourse.  She was not forced to engage in any of these sexual acts.

"After having sexual intercourse, they slept through the night and woke up the next morning.  Kelly did not tell anyone what had happened that day with appellant.

"On October 12, 2018, some police officers came to her mother's apartment and showed her a picture of appellant.  Kelly identified appellant as the person she had sexual intercourse with.  On October 25, 2018, Kelly spoke with a social worker at CAST.  Kelly admitted telling the social worker that she attended a party and she told everyone that she was 17-years old.  Kelly lied in her interview with police and social worker when she said she had stopped using methamphetamine.  Kelly was still using methamphetamine at the time of the interviews.

"On November 6, 2018, City of Anaheim Police Officer Long Cao ('Cao') interviewed appellant at the Anaheim Detention Facility in the City of Anaheim.  The interview was recorded by Cao's body camera.  The videotape of the recorded interview was played for the jury.

"Appellant told Cao that when he met Abby and Kelly, he thought they were both fifteen.  Appellant admitted orally copulating and having sexual intercourse with Kelly at the laundromat.  Appellant stated that the sexual activities were Kelly's idea.[1]

"The CAST interview was played for the jury.[2]  In the interview, Kelly described the incident at the dumpster where she performed oral copulation on appellant.  She also described the incident at the laundromat where appellant put his fingers in her vagina, she performed oral copulation, and they had sexual intercourse.  Kelly did not believe that appellant ejaculated inside of her.

---

[1]    The transcript of the interview (Exhibit 1) appears in the clerk's transcript.
[2]    The transcript of the CASE interview (Exhibit 2A) is in the clerk's transcript.

3

"Kelly said she told appellant that she was 15-years old.  She told other friends that she was 17-years old to obtain dope.  At one point, she claimed she told appellant that she was not yet fourteen.

"The parties stipulated that Kelly had committed assault on a school campus on October 19, 2017 and made criminal threats on October 9, [2018]."

DISCUSSION

Arteaga filed an appeal, and we appointed counsel to represent him on that appeal.  Counsel filed a brief which fully set forth the facts of the case, set out above, which did not differ in significant detail from the facts we found in the record.  As noted, we have adopted that as our own for purposes of this opinion.  Counsel did not argue against her client but advised the court she could find no issues to argue on his behalf.[3]  Appellant was invited to express his own objections to the proceedings against him but did not.  Under the law, this put the onus on us to review the record and see if *we* could find any issues that might result in some kind of amelioration of appellant's lot.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  It should be emphasized that our search was not for issues upon which appellant *would* prevail, but only issues upon which he *might possibly* prevail.

We have examined the record and found no arguable issue.  This is not surprising.  In fact, it is what we find in the vast majority of cases in which appellate counsel files a *Wende* brief.  Even the most cynical observer of the legal system would have to recognize that appellate counsel has a financial incentive for finding issues.  The simple matter is counsel makes more money if he/she finds an issue that is arguable than if he/she does not.  So while it sometimes happens that an appellate court will find issues after appellate counsel has thrown in the towel, it is unusual.

---

[3]     Appellate counsel had already found and corrected a discrepancy between the 16-month term the court had imposed and suspended and the two-year term erroneously reflected in the minute order.

4

This case is not unusual – at least not in any way that benefits appellant. The case against him was pretty much overwhelming, but that is the only thing remarkable about it. Appellate counsel considered and rejected the possibility of attacking the sufficiency of the evidence, and we can certainly see why. The evidence was not only considerably greater than the legal standard requires, it was more or less irrefutable. Appellant confessed to some of the crimes he is charged with, contending only that it was his victim's idea.

We are unable to find any flaw in the police conduct which led to appellant's admissions. Appellant was 35 years old, had no problems with the language, and was properly Mirandized (*Miranda v. Arizona* (1966) 384 U. S. 436). While his trial counsel tried valiantly to find flaws in what was said to appellant about the use of force in the crimes, the police did not go beyond the bounds of appropriate interview technique. His statements were admissible.

Nor can we find any problem with the instructions. While appellate counsel considered contesting the court's refusal to instruct the jury with CALCRIM No. 3406 (mistake of fact), mistake about the victim's age is not a defense to a *completed* violation of the charges in this case; it could apply only to attempts. There was no testimony from which the jury could infer an attempt here so the instruction was inapt.

We have looked at appellate counsel's reference to *People v. Duenas* (2019) 30 Cal.App.5th 1157, and find no error. The trial court imposed minimum fines and offered to hear evidence about appellant's financial condition, either at sentencing or when appellant is released from custody. Appellant made no request to offer evidence at sentencing; the postrelease offer remains available.

Our own review of the record leads us to concur with appellate counsel: there is no arguable issue on appeal.  The conviction is affirmed.


                                        BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.